```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                          :
PIERRE LUC CM EVOUNG,            :
                                            :
                         Plaintiff,   :            1:25-cv-9182-GHW
           -v-                     :
                                            :             ORDER
CHEVOR POMPEY, *et al.*,       :
                                            :
                      Defendants.  :
                                            :
------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiff Pierre Luc Evoung filed this action *pro se* on November 4, 2025, alleging that an order issued against him by the Bronx County Family Court was coercive and violated his constitutional rights. Plaintiff paid the filing fee to initiate this action. On November 25, 2025, Defendants filed a letter motion requesting that the Court dismiss the complaint "without the requirement of full briefing," or in the alternative requesting leave to file a motion to dismiss. Dkt. No. 6 at 1. Plaintiff filed a response to Defendants' letter motion on December 1, 2025. Dkt. No. 8. On December 23, 2025, the Court ordered Plaintiff to show cause by January 26, 2026 as to why this action should not be dismissed. Dkt. No. 9 (the "Order"). Plaintiff filed a response on January 13, 2026. Dkt. Nos. 11 ("Resp."), 11-1 ("Attach."). Plaintiff's response fails to show that any exception to the abstention doctrine applies, so his claims for declaratory relief are dismissed. Plaintiff's response fails to overcome Defendants Pompey and Vialet's judicial immunity, so the claims against them are also dismissed. Because Plaintiff's response can be read as attempting to raise a federal disability-related claim and the Court cannot conclude that amendment would be futile, the Court dismisses any such claim without prejudice and grants leave to amend.

## II.    LEGAL STANDARD

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (per curiam) (holding that the Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).  A claim is "frivolous when either:  (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citation omitted).

The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).  But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## III.    DISCUSSION

The Court assumes the parties' familiarity with the factual and procedural history set forth in the Court's December 23, 2025 Order and recounts it only as necessary to address the arguments raised in Plaintiff's response.  Because Plaintiff largely reiterates the same facts and conclusions previously considered, the Court focuses on the new assertions and whether they cure the defects identified in the Order.

### A. *Younger* Abstention Applies

Because Plaintiff does not allege facts bringing his claims within an exception to *Younger* abstention, the Court abstains from exercising jurisdiction over Plaintiff's claims for declaratory relief. The "bad faith exception" requires a plaintiff to show that "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002). And the "extraordinary circumstances" exception requires a plaintiff to show that "the state court [is] incapable of fairly and fully adjudicating the federal issues before it." *Id.* at 201 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)). Plaintiff asserts that child support enforcement is "rushed" and systemically biased because states receive performance-based incentives tied to paternity establishment and collections, which he characterizes as a "conflict of interest[]." Resp. at 8–9. These allegations amount to a generalized critique of the child support system and do not plausibly suggest that Plaintiff's own proceeding was initiated with or is animated by a retaliatory or illegitimate motive, or that the state courts are incapable of fairly adjudicating his federal claims.

### B. Domestic Relations Abstention Applies

Even if *Younger* abstention did not apply, the domestic relations abstention doctrine independently weighs against the exercise of jurisdiction. Plaintiff fails to show that this case falls outside of the realm of domestic relations or that there is an obstacle to full and fair resolution in state court. The domestic relations abstention doctrine counsels that federal courts should abstain from exercising jurisdiction over matrimonial issues—*i.e.*, cases "where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child"—if there is "no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (citation omitted). Plaintiff's assertions—that he never married the child's mother, did not sign the birth certificate, and that no DNA test established paternity—underscore

that his claims remain intertwined with parentage and child support enforcement issues that are squarely within the interest and expertise of the Family Court.  Resp. at 6.  And Plaintiff does not demonstrate that state courts cannot address these issues or his constitutional claims.  Accordingly, the Court declines to exercise jurisdiction over Plaintiff's claims to the extent they implicate the child support and paternity proceedings in the Family Court.

### C.  Judicial Immunity Bars Claims Against Clerk of Court Vialet and Support Magistrate Pompey

Clerk of Court Vialet is entitled to judicial immunity.  Plaintiff previously argued that Ms. Vialet violated his constitutional rights by signing the show cause order directing him to appear at a hearing on November 4, 2025.  Compl. at 5.  As the Court explained in the Order, judicial immunity applies when the challenged act is judicial in nature, and "the act of issuing an order compelling another party to appear is at the heart of the judicial function."  Order at 9 (quoting *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011)); *see also Tewari v. Tsoutsouras*, No. 23-CV-6667, 2024 WL 177445, at *1–2 (S.D.N.Y. Jan. 17, 2024).  Plaintiff now argues that Ms. Vialet is "guilty of forgery in the second degree because she emitted an administrative order to show cause with the inten[t] of making it appear like a judicial order to show cause."  Resp. at 34.

That contention is flatly unsupported by the face of the document itself.  What Plaintiff labels an "order to show cause" is captioned "SUMMONS – PATERNITY," and it directs, "YOU ARE HEREBY SUMMONED to appear" at a specified hearing.  Dkt. No. 8 at 16.  The "show cause" phrasing appears only in describing the purpose of that hearing—*i.e.*, that Plaintiff is summoned "to show cause why" the relief requested "should not be made."  *Id.*  Plaintiff's effort to recharacterize a summons as a "forged" judicial order is unavailing:  he is still, at bottom, challenging the issuance of a summons requiring him to appear, conduct for which the Court has already held Ms. Vialet is entitled to judicial immunity.

4

Support Magistrate Pompey is also entitled to judicial immunity.  As explained in the Order, "New York Family Court Support Magistrates, as New York State judicial officers, enjoy . . . judicial immunity, when presiding over child support proceedings."  *Cora v. Wright*, No. 24-CV-0263, 2024 WL 450247, at *2 (S.D.N.Y. Feb. 5, 2024).  Judicial immunity does not apply when a judge takes action "outside" her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction."  *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam).  Plaintiff does not plausibly allege either circumstance.  Instead, Plaintiff argues generally that the Family Court proceedings are "administrative," therefore, there is "no judicial immunity."  Attach. at 1–2.  And, for the same reasons explained above with respect to Ms. Vialet, Plaintiff's assertion that Mr. Pompey is a "co-defendant in the forgery act" is both conclusory and unsupported by the document upon which Plaintiff relies.  Resp. at 34.  Plaintiff therefore has not plausibly alleged facts that would strip Mr. Pompey of judicial immunity, and the claims against him are dismissed.

### D.  Plaintiff Fails to State a Section 1983 Claim Against Deputy Commissioner Stack in Her Individual Capacity

Plaintiff does not plead a plausible Section 1983 claim against Deputy Commissioner Stack in her individual capacity.  As explained in the Order, Ms. Stack, in her official capacity as an officer of the state, is entitled to Eleventh Amendment immunity from claims for money damages.  Order at 10.  Plaintiff's response appears to assert claims against Ms. Stack in her individual capacity.  Construing the response to raise the strongest claims it suggests, the Court interprets it as asserting a claim under 42 U.S.C. § 1983 based on Ms. Stack's alleged responsibility for policies or training that resulted in disability-related harm.[1]  *See* Resp. at 7–9.  For purposes of this analysis, the Court

---

[1] Plaintiff alleges in relevant part:

> While trying to fill up my motion to show cause at the family court, I was sent to the [C]hild [S]upport [S]ervices.  After waiting for approximately a[n] hour or more, I was asked to leave my email and that I

accepts as true Plaintiff's assertion that he is a qualified individual with a disability. *Id.* at 3.

To state a claim under Section 1983, a plaintiff must allege facts showing a defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013). A defendant cannot be held liable under Section 1983 solely because she employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

First, Plaintiff's Section 1983 claim fails because he does not plausibly allege a constitutional violation. His allegations—that staff failed to identify themselves and thus did not accommodate his vision impairment—sound, if at all, in disability discrimination under the Americans with Disabilities Act ("ADA") or Section 504 of the Rehabilitation Act ("Section 504"). Resp. at 9 ("This whole time Child Support Services forgot about the [ADA] and section 504 . . . ."). But a violation of those statutes does not, without more, establish a constitutional violation. *See Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014) ("[F]reedom from discrimination on the basis of disability is a right secured by statute, not by the Constitution." (citations omitted)), *rev'd in part on other grounds*, *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86 (2d Cir. 2020). Nevertheless, the same

---

will be contacted. I requested the name of the ladies that were assisting me, and I was told that I can just consider them as "Child Support workers". Unfortunately, I was never called or contacted. On multiple instances . . . I was confronted at Child Support Services agents that refused to identify themselves. Is it part of their training? . . . There is obviously a lack of adequate training of the Child Support Services employees that is causing a constitutional harm. Moreover, the lack of proper policies at the CSS by refusing to identify themselves, and assist properly on multiple instances. On a state level, Eileen M Stack, in her individual capacity is responsible for the training of the staff and for the enforcement of the administrative policies without judicial grounds, and other policies that result in employees refusing to identify themselves. . . . This whole time Child Support Services forgot about the Americans with Disabilities [A]ct (ADA) and section 504 of the Rehabilitation Act of 1973 that prohibit discrimination of person with disabilities in the child support and welfare services, requiring the agencies to provide full access, reasonable modifications and auxiliary aids to ensure equal participation, preventing decision based on stereotypes and demanding individualized assessment for services. . . . The reason why I'm always asking for the person in front of me, to identify themselves is because, I do not see properly. As an astigmatism patient, my vision is not as straightforward as the usual service user.

Resp. at 7–9.

conduct may, in some cases, support a claim under the Equal Protection Clause of the Fourteenth Amendment. *See, e.g.*, *Muhammad v. Annucci*, No. 19CV3258, 2020 WL 264104 (S.D.N.Y. Jan. 17, 2020), *report and recommendation adopted*, 2020 WL 1303571 (S.D.N.Y. Mar. 19, 2020). To state an Equal Protection claim, however, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Here, Plaintiff does not plausibly allege that he was treated differently from other members of the public seeking to engage with Child Support Services. Plaintiff also fails to allege facts suggesting that any refusal by staff to provide their names was because of his disability.

And even if Plaintiff had alleged a constitutional violation, he has not sufficiently pleaded Ms. Stack's direct and personal involvement in that violation. Personal involvement requires "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). A defendant "may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Id.* Here, Plaintiff pleads no facts suggesting that the employees' alleged conduct resulted from a policy or custom attributable to Ms. Stack, that Ms. Stack was aware of the conduct, or that she otherwise participated in or condoned it. Absent such allegations, Plaintiff fails to state a cognizable Section 1983 claim against Ms. Stack.

### E. Plaintiff Fails to State a Claim Under the ADA or Section 504

To the extent that Plaintiff now purports to assert claims under the ADA or Section 504, any such claims were not pleaded in the Complaint and are not properly before the Court. In any event, Plaintiff does not allege facts that would plausibly support such claims. To state a claim

7

under Title II of the ADA or Section 504, a plaintiff must show the following:

> (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability.

*McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).  Plaintiff does not plausibly allege that he was denied access to, or meaningful participation in, Child Support Services because of his disability. The alleged refusal of staff to provide their names, without more, does not amount to exclusion from services, denial of benefits, or a failure to provide a reasonable accommodation.  Accordingly, Plaintiff fails to state a claim under either the ADA or Section 504.

### F.  The Bronx Family Court Is Entitled to Eleventh Amendment Immunity

As explained in the Order, the Family Court is part of the New York State Unified Court System and therefore an arm of the State; absent waiver or a valid congressional override, it is "protected by the State's sovereign immunity from suit in federal court."  Order at 12–13; *see McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Plaintiff's response asserts that sovereign immunity is defeated because the Family Court receives federal funding.  Resp. at 12–19.  He points to Title IV-D, 42 U.S.C. § 651 *et seq.*, and Title IV-E, 42 U.S.C. § 670 *et seq.*, of the Social Security Act, as well as the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. § 5101 *et seq.*, contending that the State's acceptance of funds under those statutes constitutes a waiver of immunity.  *Id.* at 12–13.

Congress may condition a State's receipt of federal funds on its consent to waive its sovereign immunity from suit in federal court.  *T.W. v. N.Y. State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021).  But any such condition must be stated "unambiguously" so that States may "exercise their choice knowingly, cognizant of the consequences of their participation."  *See South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (citation omitted).  Plaintiff identifies no provision in Title IV-D, Title IV-E, or CAPTA that contains such a clear statement, and cites no authority suggesting that

8

participation in these funding programs alone effects a waiver.  Moreover, to the extent any of these statutes could support private enforcement, Plaintiff does not assert any such claims.  *See, e.g., Nimham-El-Dey v. Children's Aid Soc'y*, No. 21 CIV. 8237, 2022 WL 4109781, at *3 (S.D.N.Y. Sept. 8, 2022) ("CAPTA does not create a private right of action (meaning that individuals are not legally permitted to sue for relief under the statute).").

Plaintiff separately invokes Section 504 of the Rehabilitation Act as a basis for his waiver argument.  Unlike the statutes discussed above, Congress has expressly conditioned a State's acceptance of federal funds on a waiver of sovereign immunity for Section 504 claims.  *See T.W.*, 996 F.3d at 92; 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . .").  But as explained in Section E, Plaintiff fails to state a viable Section 504 claim, so any potential waiver of immunity is immaterial here.

### G.  Leave to Amend

The Court denies Plaintiff leave to amend his claims seeking declaratory relief and his claims against Mr. Pompey and Ms. Vialet because any further amendment would be futile.  District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

Nevertheless, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously

allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "[R]epeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

No amendment can cure the deficiencies with respect to Plaintiff's claims seeking declaratory relief, which are barred by *Younger* abstention and domestic relations abstention. Likewise, no amendment can cure the deficiencies with respect to Plaintiff's claims against Mr. Pompey and Ms. Vialet since they are entitled to judicial immunity for the alleged actions that underlie Plaintiff's claims. Accordingly, these claims are dismissed with prejudice and without leave to amend. Plaintiff's response suggests he may be attempting to plead federal disability-related claims arising from his interactions with Child Support Services. The Court cannot conclude that Plaintiff cannot plead a claim based on an alleged disability, including any such claims that might be brought under Section 1983, ADA, and Section 504. Accordingly, Plaintiff's federal disability-related claims are dismissed without prejudice and with leave to amend. Any amended complaint must be filed within 21 days of the date of this order.

### H. Supplemental Jurisdiction

As the Court explained in its Order, a court generally will not exercise supplemental jurisdiction over state-law claims if all federal claims have been dismissed. *See* Order at 13–15 (citing *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)). Because the Court is granting Plaintiff leave to amend any federal disability-related claims, the Court cannot determine at this time

whether any federal claims will remain.  The Court therefore reserves decision regarding any causes of action governed by state law that may be suggested by the complaint.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's claims seeking declaratory relief in connection with the Bronx County Family Court proceedings and Plaintiff's claims against Mr. Pompey and Ms. Vialet are dismissed with prejudice and without leave to amend.  Plaintiff's federal disability-related claims are dismissed without prejudice, and Plaintiff is granted leave to amend.  Any amended complaint must be filed no later than 21 days from the date of this order.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated:  March 3, 2026
        New York, New York

_____
GREGORY H. WOODS
United States District Judge